# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **ANDREW GUIDRY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:20-cv-01618-ACA** |
| | } | |
| **JP MORGAN CHASE BANK, N.A.,** | } | |
| **et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Andrew Guidry bought a car that he financed through JP Morgan Chase Bank, N.A. ("Chase").  Mr. Guidry ran into financial trouble and asked Chase to defer his car payments.  Chase apparently rejected Mr. Guidry's request because Connect One LLC ("Connect One"), through its employee Justin Rogers, went to Mr. Guidry's home to repossess the car on Chase's behalf.  Mr. Rogers did not have a court order or writ authorizing the repossession, so Mr. Guidry called the police to complain that Mr. Rogers was trespassing on his property.  But when Jefferson County Sheriff's Deputy Terry O'Neal arrived at  Mr. Guidry's house, he ignored Mr. Rogers' trespass and arrested Mr. Guidry for disorderly conduct when he refused to turn the vehicle over to Mr. Rogers.  This lawsuit followed.

Mr. Guidry's lawsuit alleges that  Chase Bank, Connect One, Mr. Rogers, Deputy O'Neal, and Jefferson County Sheriff Mark Pettway, violated federal and state law.  Relevant to this opinion, Mr. Guidry asserts that:

(1)   Deputy O'Neal unlawfully seized Mr. Guidry's car in violation of his Fourth Amendment rights ("Count Seven");

(2)   Deputy O'Neal falsely arrested Mr. Guidry in violation of his Fourth Amendment rights ("Count Eight");

(3)   Sheriff Pettway has supervisory liability for the seizure and arrest ("Count Nine");

(4)   Sheriff Pettway failed to train Jefferson County deputies ("Count Ten"); and

(5)   he is entitled to equitable relief against Sheriff Pettway in his official capacity ("Count Eleven").

(Doc. 29 at 15–35).

Currently before the court is Deputy O'Neal and Sheriff Pettway's motion to dismiss Mr. Guidry's claims against them.  (Doc. 33).  The court **GRANTS IN PART** and **DENIES IN PART** the motion.

Because Mr. Guidry's amended complaint plausibly alleges that Deputy O'Neal violated his clearly established Fourth Amendment right to be free from unreasonable seizures and false arrest, the court **DENIES** Deputy O'Neal's motion to dismiss the claims against him (Counts Seven and Eight), and those claims will proceed.

Because Mr. Guidry's amended complaint does not plausibly allege facts supporting a supervisory liability claim or failure to train claim against Sheriff Pettway, the court **GRANTS** Sheriff Pettway's motion to dismiss the individual capacity claims against him (Counts Nine and Ten).  The court **WILL DISMISS** Counts Nine and Ten **WITH PREJUDICE**.

Sheriff Pettway makes no specific argument in support of dismissal of the official capacity claim asserted against him in Count Eleven.  But having *sua sponte* considered the issue, the court finds that Mr. Guidry's amended complaint does not allege facts showing that he has standing to pursue prospective injunctive relief. Therefore, the court **WILL DISMISS** Count Eleven **WITHOUT PREJUDICE**.

## I.    BACKGROUND

At this stage, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff.  *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).  When deciding whether a complaint states a claim for relief, the court also normally considers "all documents that are attached to the complaint or that are incorporated into it by reference."  *Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019); *see* Fed. R. Civ. P. 10(c) (an attachment to a complaint generally becomes "part of the pleading for all purposes").  However, if a complaint "contains specific, well-pleaded allegations that either do not appear in the attached exhibits or that contradict

conclusory statements in the exhibit," then the allegations in the complaint control. *Gill*, 941 F.3d at 514.  Mr. Guidry attached to his amended complaint a copy of Deputy O'Neal's arrest affidavit.  Therefore, the court's description of the facts incorporates the amended complaint's factual allegations and the statements contained in the arrest affidavit to the extent those statements do not conflict with specific, concrete allegations in Mr. Guidry's amended complaint.

Mr. Guidry financed the purchase of a car through Chase Bank.  (Doc. 29 at ¶¶ 13–14).  Mr. Guidry suffered a financial setback and asked Chase Bank to defer his car payments.  (*Id.* at ¶ 15).  Instead of responding to Mr. Guidry's request, Chase Bank ordered Connect One to repossess Mr. Guidry's car.  (*Id.* at ¶ 17).

One evening in October 2019, Connect One employee Justin Rogers arrived at Mr. Guidry's house and told Mr. Guidry that he was there to repossess Mr. Guidry's car.  (Doc. 29 at ¶¶ 18–19).  Mr. Rogers did not have a court order or other similar writ entitling Chase Bank or Connect One to possession of the car.  (*Id.* at ¶ 22).  Mr. Guidry told Mr. Rogers that he was trespassing on private property and repeatedly ordered Mr. Rogers to leave.  (*Id.* at 23).  Mr. Rogers refused to leave and turned on additional flashing lights on top of his truck.  (Doc. 29 at 24).

Mr. Guidry then called the Jefferson County Sheriff's Office for help and told the dispatcher that Mr. Rogers was trespassing on his property.  (*Id.* at ¶ 25).  Minutes later, Jefferson County Deputy Terry O'Neal arrived at Mr. Guidry's home.  (*Id.* at

4

¶ 29).  While standing beside Mr. Guidry's car, Mr. Guidry, Mr. Rogers, and Deputy O'Neal discussed that Mr. Rogers could not take the car because it was attached to Mr. Guidry's home with a steel cable.  (Doc. 29 at ¶ 31).   Even though Deputy O'Neal knew that neither Chase Bank nor Connect One or Mr. Rogers had a court order or writ for repossession of the car, Deputy O'Neal told Mr. Guidry that Mr. Rogers had a right to take the vehicle.  (*Id.* at ¶¶ 32–34).

Mr. Guidry "politely" told Deputy O'Neal that his actions were in violation of Mr. Guidry's rights and that the issue between Mr. Guidry and Mr. Rogers was "purely a civil matter."  (*Id.* at ¶ 35).  Deputy O'Neal then told Mr. Guidry that he could either remove the steel cable that attached the car to the house and let Mr. Rogers have the vehicle or Deputy O'Neal would arrest Mr. Guidry for disorderly conduct.  (Doc. 29 at ¶ 36).  When Mr. Guidry refused to remove the lock to the cable, Deputy O'Neal arrested Mr. Guidry and again told Mr. Rogers he could take the car.  (*Id.* at ¶¶ 37, 39–40, 44–45; Doc. 29-1 at 3).  As Mr. Rogers drove off, he tore Mr. Guidry's car from the steel cable which damaged Mr. Guidry's home, the cable, and the car.  (Doc. 29 at ¶ 39).

Deputy O'Neal took Mr. Guidry to the Jefferson County Jail where he was booked on a disorderly conduct charge.  (*Id.* at ¶ 40; Doc. 29-1 at 4).  A judge

dismissed the criminal case against Mr. Guidry for lack of prosecution.  (Doc. 29 at ¶ 62).

Mr. Guidry alleges that Deputy O'Neal's actions were consistent with customs and practices authorized by the Jefferson County Sheriff's Office and Sheriff Mark Pettway that permit deputies to assist with private repossessions.  (*Id.* at ¶¶ 53–58).  According to the amended complaint, Sheriff Pettway oversees training of Jefferson County deputies, and as part of their training, deputies are advised to routinely assist repossession companies and secured parties with self-help repossessions.  (*Id.* at ¶¶ 50, 53).  The amended complaint also alleges that Jefferson County deputies "regularly provide active assistance to repossession agencies and secured parties."  (Doc. 29 at ¶ 56).

## II.    DISCUSSION

"To survive a [Rule 12(b)(6)] motion to dismiss, the plaintiff must plead 'a claim to relief that is plausible on its face.'"  *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Deputy O'Neal and Sheriff Pettway move to dismiss Mr. Guidry's claims against them under Federal Rule of Civil Procedure 12(b)(6) on the grounds of

qualified immunity.  (Doc. 33).  "Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  So when a defendant asserts qualified immunity in a motion to dismiss, the court looks "to the pleadings to see if the plaintiff has successfully alleged a violation of a clearly established right."  *O'Rourke v. Hayes*, 387 F.3d 1201, 1206 (11th Cir. 2004).

To establish they are entitled to qualified immunity, Deputy O'Neal and Sheriff Pettway must first prove the actions they took are "within the scope of his discretionary authority."  *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018).  An official acts within the scope of his discretionary authority if his actions were "(1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority."  *Estate of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018) (quotation marks omitted)

The parties do not dispute that Sheriff Pettway was acting in the scope of his discretionary authority, but Mr. Guidry argues that because Deputy O'Neal "could not lawfully give Guidry's vehicle to [Mr. Rogers] absent court-order[, . . . he] acted

outside the scope of his job-related powers and responsibilities." (Doc. 37 at 25). The court disagrees.

Deputy O'Neal responded to Mr. Guidry's call for assistance and arrested Mr. Guidry. (Doc. 29 at ¶ 29–30, 39). These are discretionary functions. *See Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) ("[T]here can be no doubt that" the officer "was acting in his discretionary capacity when he arrested" the plaintiff.). Mr. Guidry argues that Deputy O'Neal acted outside his authority by demanding that Mr. Guidry remove the steel cable from his car and arresting him for not doing so. (Doc. 37 at 25). But in determining whether an official acts within his discretionary authority, the court considers "the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017) (quotation marks omitted). That Deputy O'Neal might have seized Mr. Guidry's car or arrested him in an unconstitutional manner does not affect the analysis.

Because Deputy O'Neal and Sheriff Pettway were acting within their discretionary authority, the burden shifts to Mr. Guidry to show that accepting the allegations in the amended complaint as true, Deputy O'Neal and Sheriff Pettway violated his constitutional rights and that those rights were clearly established.

*Terrell v. Smith*, 668 F.3d 1244, 1249–50 (11th Cir. 2012).  The court is permitted to decide which of these two prongs should be addressed first.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

With these principles in mind, the court addresses each alleged constitutional violation.

1.   Count Seven (42 U.S.C. § 1983 Unlawful Seizure) Against Deputy O'Neal

In Count Seven of his amended complaint, Mr. Guidry alleges that Deputy O'Neal violated his clearly established Fourth Amendment right to be free from unlawful seizures by telling Mr. Guidry that Mr. Rogers had the right to possess the car, ordering Mr. Guidry to remove the cable attaching his car to his home or face arrest, arresting Mr. Guidry and allowing Mr. Rogers to take possession of the car, and preventing Mr. Guidry from protecting his property.  (Doc. 29 at 22–24).

The Fourth Amendment, as applied to the States through the Fourteenth Amendment, prohibits "unreasonable searches and seizures."  U.S. Const. amend. IV.  For purposes of the Fourth Amendment, "[a] 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."  *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  Warrantless seizures "are presumptively unreasonable, 'subject only to a few specifically established and well-delineated exceptions.'"  *United States v. Cooks*, 920 F.3d 735, 741 (11th Cir. 2019) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

Deputy O'Neal argues that he could not have violated Mr. Guidry's Fourth Amendment right against unreasonable seizures because the amended complaint alleges that Mr. Rogers—not Deputy O'Neal—seized Mr. Guidry's vehicle.  (Doc. 33-1 at 14–15).  Deputy O'Neal's argument asks the court to ignore the fact that he interfered with Mr. Guidry's ability to protect his interest in the vehicle and in fact had to arrest Mr. Guidry in order for Mr. Rogers to take possession of the car. Deputy O'Neal's position is expressly foreclosed by the Supreme Court's decision in *Soldal v. Cook Cnty.*, 506 U.S. 56 (1992).  In that case, the Supreme Court held that sheriff's deputies seized a mobile home within the meaning of the Fourth Amendment where the deputies accompanied a landlord to a mobile home park and allowed the landlord to tow a mobile home without a lawful order of eviction of the tenants who lived there.   *Id.* at 58–61.

Here, Deputy O'Neal did not accompany Mr. Rogers to Mr. Guidry's home. But once Deputy O'Neal arrived, he knew that Mr. Rogers did not have a court order entitling him to possession of Mr. Guidry's car; he knew Mr. Guidry had chained his car to his home with a steel cable; he knew that Mr. Guidry objected to the repossession; he arrested Mr. Guidry for not removing the steel cable; and he permitted Mr. Rogers to take Mr. Guidry's car.  (Doc. 29 at  ¶¶ 25, 29, 31–39). Under *Soldal*, these facts sufficiently allege that Deputy O'Neal's actions interfered with Mr. Guidry's possessory interests in the car such that Deputy O'Neal "seized"

Mr. Guidry's car within the meaning of the Fourth Amendment. Therefore, the question becomes whether the seizure was reasonable.

Notably, Deputy O'Neal makes no argument about the reasonableness of the seizure. (*See* Doc. 33-1 at 14–15). There is no allegation in the amended complaint that Deputy O'Neal had a warrant. And Deputy O'Neal points to no applicable exception to the warrant requirement that would have permitted him to constitutionally seize Mr. Guidry's car in the absence of a warrant. (*See generally* doc. 33-1). Accordingly, the amended complaint plausibly alleges that Deputy O'Neal violated Mr. Guidry's Fourth Amendment right to be free from unreasonable seizures.

Moreover, that right was clearly established at the time of the alleged misconduct in October 2019. A plaintiff can show that a right was clearly established in three ways: first, he can show that a "materially similar case" with "binding precedent tied to particularized facts" has already been decided; second, he can show that "a broader, clearly established principle should control the novel facts of a particular case;" and third, he can show that the case "fits within the exception of conduct which so obviously violates the Constitution that prior case law is unnecessary." *Waldron v. Spicher*, 954 F.3d 1297, 1304–05 (11th Cir. 2020) (quotation marks omitted; alterations accepted).

Deputy O'Neal argues that Mr. Guidry has not cited a Fourth Amendment seizure case with indistinguishable facts.  But that does not foreclose Mr. Guidry's claim.  As noted above, there are two other ways to show that the right is clearly established, and Mr. Guidry can meet his burden of showing that case law demonstrated the right to be free of warrantless seizures of his personal property with obvious clarity in October of 2019.

The Eleventh Circuit has explained that "[t]he right to be free from warrantless seizures of personal property, absent an applicable exception, was clearly established to the point of obvious clarity" since before 2012.  *Crocker v. Beatty*, 886 F.3d 1132, 1138 (11th Cir. 2018).  As applied to the novel facts alleged in Mr. Guidry's complaint, this broad statement of principle would have given Deputy O'Neal fair warning that his conduct violated Mr. Guidry's Fourth Amendment right against unreasonable seizures because he actively participated in an unlawful private repossession.

Under Alabama law, upon default, a secured party has the right to take possession of collateral "without judicial process," if the repossession "proceeds without a breach of the peace."  Ala. Code § 7-9A-609(a)(1), (b)(2).  Mr. Guidry's amended complaint alleges that he confronted Mr. Rogers for trespassing when Mr. Rogers arrived to repossess the car.  (Doc. 29 at ¶¶ 18–19, 23).  In response, Mr. Rogers turned on additional lights on his tow truck.  (*Id.* at ¶ 24).  When Mr. Rogers

refused to leave Mr. Guidry's property, Mr. Guidry called the Jefferson County Sheriff's Office, and Deputy O'Neal arrived.  (*Id.* at ¶¶ 25, 29).

Deputy O'Neal knew that Mr. Rogers had no valid court order entitling him to take possession of the car, and he knew that Mr. Guidry objected to the repossession.  Still, Deputy O'Neal arrested Mr. Guidry for not removing the lock to the steel cable that attached his car to his home.  He then permitted Mr. Rogers to drive away with Mr. Guidry's car, which broke the steel cable and caused damage to Mr. Guidry's car and house.  (Doc. 29 at ¶¶ 31–39).  As pleaded, these facts plausibly show that Deputy O'Neal knew Mr. Rogers was attempting to repossess the car without a court order while breaching the peace under Alabama law.  *See Madden v. Deere Credit Servs., Inc.*, 598 So. 2d 860, 867 (Ala. 1992) (construed in light most favorable to plaintiff, fact question existed at summary judgment about whether creditor breached the peace because access to the collateral was blocked by a locked gate which the creditor had to force open); *Reno v. Gen. Motors Acceptance Corp.*, 378 So. 2d 1103, 1105 (Ala. 1979) (defining "breach of the peace" as any "situation tending to disturb the public order").

Therefore, construing the facts in the light most favorable to Mr. Guidry, Deputy O'Neal assisted in what he knew was a wrongful private repossession and seized Mr. Guidry's car without a warrant.  Deputy O'Neal has not argued that any exception to the warrant requirement applies, and the amended complaint does not

allege facts suggesting any exception would have permitted Deputy O'Neal to constitutionally seize Mr. Guidry's car.   Accordingly, the amended complaint states a claim that Deputy O'Neal violated Mr. Guidry's clearly established Fourth Amendment right to be free from unreasonable seizures.

The court's finding is consistent with the reasoning of *Soldal*.  As already explained, in *Soldal*, the Supreme Court held that sheriff's deputies' allowing a landlord to tow away a tenant's mobile home without a lawful eviction order was a seizure under the Fourth Amendment.  *Soldal*, 506 U.S. at 58–61.  The Supreme Court explained that whether the deputies' conduct violated the Fourth Amendment would require a determination about the reasonableness of the seizure, an issue that was not before the Court.  *Id.* at 62–63.  However, the Supreme Court noted that "numerous seizures" of the type in *Soldal* would survive constitutional scrutiny because for example, officers might act pursuant to a court order.  *Id.* at 71.  In addition, the Supreme Court cautioned that it "doubted police will often choose to further an enterprise knowing that it is contrary to law, or proceed to seize property in the absence of objectively reasonable grounds for doing so."  *Soldal*, 506 U.S. at 72.  Therefore, although the Supreme Court made no determination as to the reasonableness of the seizure in *Soldol*, implicit in the Supreme Court's dicta on the issue is the understanding that if the seizure had been unreasonable, then it would have violated the Fourth Amendment.  And here, for the reasons explained above,

Deputy O'Neal's assisted in a private repossession that was contrary to Alabama law, resulting in an unreasonable seizure of Mr. Guidry's car. Accordingly, the reasoning of *Soldal* supports the court's finding that the unlawfulness of Deputy's O'Neal's actions was clearly established

The Eleventh Circuit's opinion in *Cofield v. Randolph Cnty. Comm'n*, 90 F.3d 468 (1996), is not to the contrary. In *Cofield*, the Eleventh Circuit affirmed a district court's decision to grant qualified immunity to a sheriff's deputy on an unreasonable seizure claim when the deputy arrived at the conclusion of a private repossession that he could not have known was wrongful because no precedent had clearly held that "an officer's *mere presence* at (or after) a lawful instance of self-help repossession can amount to a violation" of the Fourth Amendment. 90 F.3d at 472 (emphasis added). The Eleventh Circuit distinguished the facts of *Soldal* as a situation where deputies assisted in a private eviction that was "patently unlawful." *Id.* at 471. Unlike *Cofield*, but precisely like *Soldal*, Mr. Guidry's complaint alleges facts showing that Deputy O'Neal actively assisted in a knowingly unlawful private repossession by arresting Mr. Guidry for not allowing Mr. Rogers to take his car even though Mr. Rogers had no court order and was creating a breach of the peace.

Even if a broader principle did not put Deputy O'Neal on notice that his conduct was unlawful, the court finds that the conduct so obviously violates the constitution that prior case law is unnecessary. Here, Deputy O'Neal arrived at Mr.

Guidry's home at his request to investigate Mr. Guidry's complaint that Mr. Rogers was trespassing on his property.  (Doc. 29 at ¶¶ 25, 29).  Deputy O'Neal knew that Mr. Rogers had no court order entitling him to possession of Mr. Guidry's car.  (*Id.* at ¶¶ 32–24).  Deputy O'Neal knew that Mr. Guidry objected to Mr. Rogers' repossession of the car and had even chained the car to his home in an effort to protect his property.  (*Id.* at ¶ 31).  Yet, Deputy O'Neal told Mr. Guidry that Mr. Rogers had a right to take the car and arrested Mr. Guidry when he would not unlock the chain, which allowed Mr. Rogers to take the car over Mr. Guidry's obvious protest damaging not only Mr. Guidry's home but also the car.  (Doc. 29 at ¶¶ 37, 39–40, 44–45).  Faced with these facts, no reasonable officer in Mr. Guidry's position would have believed that his actions were legal.

In sum, at the pleading stage, Deputy O'Neal's alleged conduct violated Mr. Guidry's clearly established Fourth Amendment right to be free from unreasonable seizures.  Therefore, Deputy O'Neal is not entitled to qualified immunity, and the court **DENIES** Deputy O'Neal's motion to dismiss Count Seven.

### 2. Count Eight (42 U.S.C. § 1983 False Arrest) Against Deputy O'Neal

In Count Eight of his amended complaint, Mr. Guidry alleges that Deputy O'Neal falsely arrested him in violation of his Fourth Amendment rights.  (Doc. 29 at 24–26).

"An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Id.*

However, "[t]o receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause." *Grider v. City of Auburn*, 618 F.3d 1240, 1257 (11th Cir. 2010). "Arguable probable cause exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest Plaintiff.'" *Id.* (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004), *abrogated on other grounds by Williams v. Aguirre*, 965 F.3d 1147 (11th Cir. 2020)). To determine whether an officer had arguable probable cause to arrest, the court considers "the elements of the alleged crime and the operative fact pattern." *Grider*, 618 F.3d at 1257.

Deputy O'Neal arrested Mr. Guidry for disorderly conduct. (Doc. 29 at ¶ 40). Alabama's disorderly conduct statute provides, in relevant part:

(a) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he or she does any of the following:

> (1) Engages in fighting or in violent tumultuous or threatening behavior.
>
> (2) Makes unreasonable noise.
>
> (3) In a public place uses abusive or obscene language or makes an obscene gesture.
>
> (4) Without lawful authority, disturbs any lawful assembly or meeting of persons.
>
> (5) Obstructs vehicular or pedestrian traffic, or a transportation facility.
>
> (6) Congregates with other person in a public place and refuses to comply with a lawful order of law enforcement to disperse.

Ala. Code § 13A-11-7(a)(1)–(6).

Nothing in the amended complaint or the arrest affidavit identifies which subsection of the disorderly conduct statute Deputy O'Neal believes Mr. Guidry violated.  But because the arrest took place on Mr. Guidry's private property, it is clear that Deputy O'Neal could not have had even arguable probable cause to arrest Mr. Guidry under subsections (a)(3) or (a)(6) because these subsections regulate conduct in public places.  In addition, the amended complaint alleges no facts suggesting that Mr. Guidry disturbed a lawful assembly or meeting or that he obstructed vehicular or pedestrian traffic or a transportation facility, subjecting Mr. Guidry to arrest under subsections (a)(4) or (a)(5).  Therefore, the court

examines whether Deputy O'Neal had arguable probable cause for determining that Mr. Guidry engaged in conduct that violated subsections (a)(1) or (a)(2).

In support of his contention that he had arguable probable cause to arrest Mr. Guidry, Deputy O'Neal relies solely on the information contained in the arrest affidavit in which he stated that Mr. Guidry behaved in a "disorderly manner," became "irate," and "alarm[ed] his neighbor." (Doc. 29-1 at 3–4). But Mr. Guidry's amended complaint contains a specific allegation that he "politely" told Deputy O'Neal that he was violating his rights. (Doc. 29 at ¶ 35). This allegation contradicts the contents of the arrest affidavit that Deputy O'Neal cites. Therefore, the court must credit Mr. Guidry's allegation that he was polite. *Gill*, 941 F.3d at 514–15. And Mr. Guidry's polite conduct does not provide probable cause or even arguable probable cause to arrest Mr. Guidry for disorderly conduct under subsection (a)(1) or (a)(2) which prohibits engaging in fighting or in violent tumultuous or threatening behavior and making unreasonable noise.   Thus, as alleged in the amended complaint, Deputy O'Neal did not have probable cause or arguable probable cause to arrest Mr. Guidry for disorderly conduct. Therefore, Deputy O'Neal violated Mr. Guidry's right to be free from false arrest.

In addition, when Deputy O'Neal arrested Mr. Guidry, it was clearly established that "an objective officer could not have concluded reasonably that probable cause existed" to arrest Mr. Guidry "under the particular circumstances"

Deputy O'Neal confronted. *Gates v. Khokhar*, 884 F.3d 1290, 1303 (11th Cir. 2018). Again, accepting as true Mr. Guidry's allegation that he "politely" engaged with Deputy O'Neal, and in the absence of any other fact bearing on the nature of Mr. Guidry's interaction with Deputy O'Neal that the court can consider at this stage, Mr. Guidry could not have engaged in conduct that violated Alabama's disorderly conduct statute. Therefore, the court finds that every reasonable officer in Deputy O'Neal's position would have known that no probable cause or arguable probable cause to arrest Mr. Guidry existed and that such an arrest violates the Fourth Amendment.

Accordingly, the court finds that Deputy O'Neal is not entitled to qualified immunity on Mr. Guidry's false arrest claim and **DENIES** Deputy O'Neal's motion to dismiss Count Eight.

3. Count Nine (42 U.S.C. § 1983 Supervisory Liability) and Count Ten (42 U.S.C. § 1983 Failure to Train) Against Sheriff Pettway in his Individual Capacity

In Count Nine of his amended complaint, Mr. Guidry asserts a claim against Deputy O'Neal's supervisor, Sheriff Pettway, alleging Sheriff Pettway maintained a policy or custom of assisting private repossession companies with self-help repossessions resulting in unlawful searches and seizures. (Doc. 29 at ¶¶ 112–22). In Count Ten of his amended complaint, Mr. Guidry alleges that Sheriff Pettway failed to adequately train his deputies. (Doc. 29 at ¶¶ 123–27). Both counts are

asserted against Sheriff Pettway in his individual capacity.  Because Sheriff Pettway makes the same two substantive arguments in support of dismissal of Counts Nine and Ten, the court analyzes these claims together.

First, Sheriff Pettway contends that his actions could not have caused any constitutional violation because Deputy O'Neal did not violate Mr. Guidry's constitutional rights.  (Doc. 33-1 at 27).  This argument fails because, as explained above, as alleged in the amended complaint, Deputy O'Neal's actions did violate Mr. Guidry's clearly established constitutional rights.

Second, Sheriff Pettway contends that Mr. Guidry's conclusory allegations do not sufficiently show either  a causal connection between any custom or policy and the alleged constitutional deprivation for purposes of a supervisory liability claim or that Sheriff Pettway was on notice of the deficiency in his training for purposes of the failure to train claim.  The court agrees.

With respect to supervisory liability, "[i]t is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."  *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Belcher v. City of Foley*, 30 F. 3d 1390, 1396 (11th Cir. 1994)).  Rather, where, as here, there is no allegation that the supervisor participated in the alleged constitutional deprivation, "[s]upervisory liability under § 1983 occurs . . . when there is a causal connection

between the actions of the supervising official and the alleged constitutional deprivation." *Valdes v. Crosby*, 450 F.3d 1231, 1236 (11th Cir. 2006) (quotations omitted).

The Eleventh Circuit has recognized three ways that a plaintiff can establish a causal connection. *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003). First, a plaintiff can allege facts that show "the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (citing *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1561 (11th Cir. 1993)). Second, a plaintiff can show that a "supervisor's improper 'custom or policy . . . resulted in deliberate indifference to constitutional rights.'" *Id.* (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991)). Finally, "[t]he causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and [she] fails to do so." *Hartley*, 193 F.3d at 1269 (quoting *Brown v. Crawford*, 906 F. 2d 667, 671 (11th Cir. 1990).

Mr. Guidry's attempt to establish the required causal connection using the second approach, (doc. 29 at ¶¶ 58, 114–116), fails for two separate and independent reasons.

First, the amended complaint does not adequately allege a custom or policy. To establish a custom or policy, a plaintiff must allege facts showing "a persistent

and wide-spread practice." *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986); *see also Craig v. Floyd Cnty.*, 643 F.3d 1306, 1311 (11th Cir. 2011) ("A single incident of a constitutional violation is insufficient to prove a policy or custom."). The amended complaint states Jefferson County Deputies implement Sheriff Pettway's custom of regularly providing active assistance to repossession companies. (Doc. 58 at ¶ 115). But the allegation that deputies "regularly" assist in private repossessions is a "naked assertion" without "factual enhancement" and therefore, the court is not required to accept the allegation as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). What is left then is Deputy O'Neal's single incident of alleged unconstitutional behavior, which does not support an inference of a custom or policy. *See e.g., Craig*, 643 F.3d at 1311.

But even assuming the complaint adequately alleged a custom or policy of permitting deputies to assist in private repossessions, a plaintiff asserting a supervisory liability claim must show that the custom or policy was deliberately indifferent to his constitutional rights. To do so, Mr. Guidry must allege facts showing that Sheriff Pettway: "(1) [had] subjective knowledge of a risk of serious harm; (2) disregard[ed] [] that risk; (3) by conduct that is more than gross negligence." *Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013).

The amended complaint alleges only that despite having knowledge of a custom permitting deputies to unlawfully assist in private repossessions, Sheriff

Pettway "intentionally, and with deliberate indifference," has taken no action to conform his custom to the requirements of the Fourth Amendment. (Doc. 29 at ¶ 28). This conclusory recitation of the elements of a supervisory liability claim is not sufficient. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (quotation omitted); *Doe v. School Bd. of Broward Cnty.*, 604 F.3d 1248, 1267 (11th Cir. 2010) (finding that plaintiff was unable to establish supervisory liability claim based on "[c]onclusory assertion of a custom or policy resulting in deliberate indifference"). Accordingly, Mr. Guidry has not alleged that Sheriff Pettway violated his constitutional rights under a theory of supervisory liability, and Sheriff Pettway is entitled to qualified immunity.

Mr. Guidry's failure to train claim is similarly deficient. Sheriff Pettway can only be held liable for failing to train his or her employees where the failure to train amounts to deliberate indifference to the rights of persons with whom the officers come into contact." *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1052 (11th Cir. 2014) (quotations omitted; alteration accepted); *see also Belcher*, 30 F.3d at 1397 ("A supervisory official is not liable under section 1983 for an injury resulting from [her] failure to train subordinates unless his 'failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact'

24

and the failure has actually caused the injury of which the plaintiff complains.")
(quoting *Popham v. City of Talladega*, 908 F.2d 1561, 1564–65 (11th Cir. 1990)).

"[A] supervisor's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Keith*, 749 F.3d at 1054 (quotations omitted; alteration accepted). Therefore, "a plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights, and that armed with that knowledge the supervisor chose to retain that training program." *Id.* at 1052 (quotations omitted). "To establish that supervisor was on actual or constructive notice of the deficiency of training, a pattern of similar constitutional violations by untrained employees is ordinarily necessary." *Id.* at 1053 (quotations omitted; alteration accepted).[1]

Again, as explained above, the amended complaint does not adequately allege a pattern of similar constitutional violations by untrained deputies. Instead, the

---

[1] The Supreme Court has left open the possibility that a single incident may prove sufficient to hold a supervisor liable for a failure to train. *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989). In *Keith*, the Eleventh Circuit declined to "flush[ ] out the Supreme Court's hypothetical basis for § 1983 relief" because the facts of that case did not make it "obvious" that the failure to train at issue amounted to deliberate indifference. 749 F.3d at 1053 n.56. Mr. Guidry has made no argument that the facts here warrant application of the Court's "single incident" failure-to-train theory. (*See* doc. 37 at 29–35). Therefore, the court does not examine whether Deputy O'Neal's unlawful encounter with Mr. Guidry put Sheriff Pettway on notice of a need to train.

amended complaint alleges only the one constitutional violation under Sheriff Pettway's supervision—Deputy O'Neal's alleged violation at issue in this case. Because Mr. Guidry has not adequately pleaded facts showing a pattern of similar constitutional violations, the amended complaint does not suggest that Sheriff Pettway knew his training was inadequate or that he was deliberately indifferent in choosing to retain the program. Therefore, Mr. Guidry has not alleged that Sheriff Pettway violated his constitutional rights under a failure to train theory, and Sheriff Pettway is entitled to qualified immunity.

Because the amended complaint does not allege that Sheriff Pettway violated Mr. Guidry's constitutional rights, the court **GRANTS** Sheriff Pettway's motion to dismiss Counts Nine and Ten.

### 4.    Count Eleven (Civil Rights Violation § 1983 Requesting Equitable Relief) Against Sheriff Pettway

In Count Eleven of his amended complaint, Mr. Guidry alleges that he is entitled to prospective injunctive relief against Sheriff Pettway in his official capacity based on the same conduct that forms the basis of the individual capacity claims against Sheriff Pettway. (Doc. 29 at ¶¶ 128–34). The Eleventh Amendment permits a plaintiff to seek prospective injunctive relief against an official in his official capacity to prevent a continuing violation of federal law. *See Ex Parte Young*, 209 U.S. 123 (1908).

Although the introduction and conclusion of Sheriff Pettway's brief state that the court should dismiss all claims, "including any and all . . . injunctive relief claims" against him, Sheriff Pettway makes no specific argument in support of dismissal of Count Eleven. (Doc. 33-1 at 1, 29). Rather, Sheriff Pettway appears to implicitly move for dismissal of the official capacity claim based on his argument that the amended complaint fails to plausibly allege that he is individually liable for any constitutional violation. (*Id.* at 23–29).

The court has located no authority suggesting that a plaintiff's inability to state a constitutional claim against a supervisor forecloses a plaintiff's ability to seek prospective injunctive relief against that supervisor where appropriate. This makes sense in light of the Supreme Court's directive that "the inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." *Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 646 (2002). Instead, to determine whether *Ex Parte Young* permits a plaintiff to seek prospective injunctive relief against an official in his official capacity, the court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* at 645 (quotations omitted; alteration accepted). Thus, in the absence of any specific articulated ground for dismissal of the official capacity claim against Sheriff Pettway, the court is not inclined to dismiss the claim merely because

Mr. Guidry's amended complaint does not state a claim for personal, individual liability against Sheriff Pettway.

Nevertheless, the court may *sua sponte* consider the issue of standing. *Bischoff v. Osceola Cnty.*, 222 F.3d 874, 878 (11th Cir. 2000); *see also United States v. Hays*, 515 U.S. 737, 742 (1995) ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of the jurisdictional doctrines.") (quotations omitted; alteration accepted). Having reviewed Mr. Guidry's amended complaint, the court finds that Mr. Guidry has not alleged facts showing that he has standing to seek prospective injunctive relief.

"Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (emphasis in original). In other words, to have standing to seek prospective relief, a plaintiff "must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004).

Mr. Guidry's amended complaint does not allege facts plausibly showing that he is subject to a real and immediate threat of future injury. The only allegation in

the amended complaint that bears on potential future injury is that "what befell" Mr. Guidry "is capable of repetition."   (Doc. 29 at ¶ 59).   But this conclusory statement without factual support is not entitled to a presumption of truth.   *Twombly*, 550 U.S. at 557. Mr. Guidry has not alleged that he owns another car subject to private repossession such that sheriff's deputies would have an opportunity to actively assist in an unlawful private repossession of one of his vehicles in the future. Accordingly, Mr. Guidry has not alleged a "sufficient likelihood that he will be wronged again in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

Therefore, the court will dismiss Count Eleven for lack of standing.

## III.   CONCLUSION

For the reasons explained above, the court **GRANTS IN PART** and **DENIES IN PART** Deputy O'Neal and Sheriff Pettway's motion to dismiss.  (Doc. 33).

The court **DENIES** the motion to dismiss Mr. Guidry's claims against Deputy O'Neal for unlawful seizure and false arrest (Counts Seven and Eight).

The court **GRANTS** the motion to dismiss Mr. Guidry's individual capacity claims against Sheriff Pettway for supervisory liability and failure to train (Counts Nine and Ten).  The court **WILL DISMISS** those claims **WITH PREJUDICE**.

In addition, the court **WILL DISMISS WITHOUT PREJUDICE** Mr. Guidry's official capacity claim against Sheriff Pettway (Count Eleven) because Mr. Guidry does not have standing to seek prospective injunctive relief.

The court will enter an order consistent with this memorandum opinion.

**DONE** and **ORDERED** this August 30, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE